Melissa D. Wischerath
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, NY 14202
(716) 849-1333
mwischerath@lglaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE<br><br>Plaintiff,<br><br>v.<br><br>ERIE COUNTY,<br>TIMOTHY B. HOWARD, Individually and in his capacity of Sheriff of Erie County, New York;<br>THOMAS DIINA, Superintendent of The Jail Management Division, and<br>ROBERT M. DEE, Erie County Sheriff's Office Deputy at Erie County Holding Center<br><br>Defendants. | **AMENDED COMPLAINT**<br><br>Case No.:<br><br>**JURY TRIAL REQUESTED** |

Plaintiff, JANE DOE, by and through her attorneys, Lipsitz Green Scime Cambria, LLP, as and for her Complaint, hereby allege as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought under 42 U.S.C. §1983 against officials of the Erie County Holding Center "holding center", who violated the rights of a female inmate by sexually assaulting her and acting with deliberate indifference to allow that abuse. Erie County Holding Center, Erie County Sheriff's Office, Erie County, former Erie County Sheriff Timothy B.

1

Howard, and Thomas Diina, Superintendent of The Jail Management Division, knew of the imminent threat of sexual assault to Plaintiff and deliberately failed to protect her.

2. Under the New York Penal Law, an inmate can never consent to sexual activity with an officer. *See* N.Y. Penal Law §130.05. Nonetheless, Defendants cultivated a culture that allowed male staff to prey on female inmates to satisfy their sexual desires.

3. The multiple sexual assaults of the Plaintiff could have been prevented. Defendants', including both administrators and deputies, knew of the danger facing female inmates. They knew that multiple sexual assaults had occurred in their facilities. They knew individual detainees were complaining of sexual assaults that were "unsubstantiated" because the victims were routinely and unfairly discredited based solely on their status as inmates/detainees. In some cases, they knew of and tolerated, turning a blind eye, to inappropriate relationships between officers and detainees, including marriage between deputies and former inmates.[1] They knew that policies needed to be corrected and how to fix them, which recently resulted in a settlement agreement[2] between the state and county.

4. The 2022 agreement forced the Erie County Sheriff's Office to follow mandated procedures to timely and effectively address allegations of sexual misconduct between correction officers and incarcerated individuals at the Erie County Holding Center and the Erie County Correctional Facility, resolving a March 2021 lawsuit filed by Attorney General James on behalf of the New York State Commission of Correction (SCOC) against Erie County and Erie County Sheriff Timothy Howard. The 2021 lawsuit identified several instances when Sheriff Howard refused to comply with directives requiring his office to timely report allegations of sexual

---

[1] Grand jury indicts suspended jail deputy, alleges sexual contact with inmate, other domestic episodes (buffalonews.com) last accessed on October 8, 2022.
[2] https://ag.ny.gov/sites/default/files/803433_2021_judgment_to_court_9.pdf last accessed on October 18, 2022.

2

misconduct in the facilities to the SCOC, and, in many cases, doing so only after the allegations surfaced in media reports. Attorney General James also found that the Erie County Sheriff's Office conducted insufficient investigations into several of the incidents by neglecting to interview witnesses, evaluate all available evidence, or refer the matters for criminal investigation.[3]

5.  The Erie County Holding Center, Erie County Sheriff's Office, Erie County, former Erie County Sheriff Timothy B. Howard, and Thomas Diina, Superintendent of The Jail Management Division, and their supervisory agents, nonetheless chose not to act, allowing these sexual assaults to occur and continue.

6.  JANE DOE now sues under the Fourteenth and/or Eighth Amendments to the United States Constitution, 42 U.S.C. §1983, and New York common law to recover damages for the harm caused by the sexual abuse while a detainee/inmate.

**JURISDICTION AND VENUE**

7.  Subject matter jurisdiction over the federal constitutional and statutory claims is proper in this Court pursuant to 28 U.S.C. §1331. This court has jurisdiction to order nominal, compensatory and punitive damages, attorneys' fees, and injunctive and declaratory relief pursuant to 28 U.S.C. §2201 and 42 U.S.C. §§1983 and 1988.

8.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the claim occurred inside the Western District of New York.

9.  The Erie County Sheriff's Office and/or Erie County operates the Erie County Holding Center, which is the location of the incidents described herein.

10. Erie County Holding Center is in the Western District of New York.

---

[3] https://ag.ny.gov/press-release/2021/attorney-general-james-forces-erie-county-sheriff-address-rampant-sexual last accessed on October 18, 2022.

# PARTIES

## I.  PLAINTIFF

11. Plaintiff, JANE DOE, was, at all relevant times, a female detainee under the direct control and supervision of the Defendants.

12. Plaintiff, JANE DOE, is no longer in custody and now resides in Cheektowaga, New York.  During the relevant time periods, JANE DOE was housed at the Erie County Holding Center.

13. Plaintiff, JANE DOE, was, at all relevant times, participating in a supervised drug rehabilitation program and is bi-polar, and thus a qualified individual with a disability.

## II.  DEFENDANTS

14. Defendant, ERIE COUNTY, is a governmental subdivision created under the laws of the State of New York.  Erie County is charged by the laws of the State of New York with authority to maintain the Erie County Holding Center.

15. Defendant, TIMOTHY B. HOWARD, was at all relevant times the Erie County Sheriff.  TIMOTHY B. HOWARD is sued in his individual and official capacity.  As Sheriff, he is charged with custody of the Erie County Holding Center pursuant to New York laws and regulations.

16. Defendant, THOMAS DIINA, was at all relevant times the Superintendent of the Jail Management Division.  THOMAS DIINA is sued in his individual and official capacity.

17. Defendant, ROBERT M. DEE, was at all relevant times an Erie County Sheriff Deputy at the Erie County Holding Center.  ROBERT M. DEE is sued in his individual and official capacity.

**FACTUAL ALLEGATIONS**

I. **General Allegations Regarding the Treatment of Women Prisoners in New York State**

18. ERIE COUNTY operates the ERIE COUNTY HOLDING CENTER that houses male and female adults, many of whom have not been convicted of a crime.

19. ERIE COUNTY HOLDING CENTER is a pretrial, maximum-security detention facility with a total capacity of 638 inmates. It is the second largest detention facility in New York State.

20. New York has zero tolerance for sexual offenses committed against any incarcerated individual. State law deems persons in the custody of a state or local correctional facility "incapable of consent" to sexual conduct with facility employees, see N.Y. Penal Law § 130.05(3)(e)–(f), and subjects guards to criminal liability for such conduct, see, e.g., id. §§ 130.25(1), 130.60(1). These laws acknowledge that any sexual contact between a prison official and a prisoner is deemed non-consensual due to the inherent power differential between guards and prisoners.

21. As a general matter, inmates are required to follow directions or verbal commands given by the deputies. As described in further detail below, women at these facilities are routinely guarded by men working alone, including during overnight shifts in the women's units.

22. A female inmate who does not obey a direct order by a male correction officer can be "written up" or subject to discipline.

23. In holding centers, the "lockdown" refers to a period during the day when all movement within the prison is stopped and prisoners are confined to their cells.

24. "Grooming" is a term used by social scientists to refer to the process by which a person intent on engaging in illegal sexual activity, such as with a child or with a detainee, gains trust from a vulnerable victim to gain sexual access to the victim without the victim revealing the sexual contact to someone who might prevent it.

25. Male deputies' intent on engaging in sexual contact with female inmates/detainees frequently groom their victims by spending time speaking to them, allowing them to break seemingly arbitrary or minor prison rules, and providing them material gifts that make them more comfortable in prison, which can range from soap to increased pay. Female detainees are sometimes temporarily deceived into believing that such contact is consistent with a normal romantic relationship when it is a ploy to permit staff to engage in illegal sexual activity.

26. The Prison Rape Elimination Act ("PREA") is a 2003 federal law aimed at preventing rape and sexual abuse at prisons. Detailed regulations are in place pursuant to PREA and PREA audits are required at least once every three years. A "PREA complaint" refers to a complaint regarding sexual misconduct inside a prison.

27. Defendant, THOMAS DIINA, as Superintendent of Jail Management Division, at all relevant times, has responsibility for, among other things, investigating and reporting allegations of sexual assault.

**II.        The Specific Sexual Assaults of Plaintiff**

28. Beginning in approximately March of 2019 JANE DOE, was incarcerated in the Erie County Holding Center, multiple times, oftentimes relating to drug court violations.

29. In or about October of 2019, JANE DOE, was first sexually assaulted by ROBERT M. DEE, when he repeatedly and forcibly began kissing her and touching, sucking, and licking JANE DOE's breasts.

30. From approximately October of 2019 through November 20, 2019, ROBERT M. DEE, would grind his genitals up against JANE DOE's backside on numerous occasions.

31. While the facility was in "lockdown", ROBERT M. DEE, took JANE DOE, into a short block twice and ordered her to masturbate in front of him.

32. One day, when ROBERT M. DEE took JANE DOE to do some work preparing for a painting job, she invited him to touch her in a private place, and he did. Jane Doe then undid his belt, but he stopped her, saying they would have to wait until she was "on the outside" to go further. They never did see one another after her release, though he attempted to contact her.

33. Inmates are paid for their work, and one day JANE DOE was paid more money than she expected in her account. ROBERT M. DEE told JANE DOE the extra money was for the "you and me stuff," and she shouldn't mention it to other inmates.

34. Following JANE DOE's release from Erie County Holding Center, ROBERT M. DEE, attempted to contact her.

35. Although she is no longer incarcerated, JANE DOE, suffers from anxiety and flashbacks.

36. As a result of the sexual abuse, JANE DOE, suffers from depression and Post-Traumatic Stress Disorder ("PTSD") and has been medicated by a mental health specialist to treat those conditions.

**III. Defendants, Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, By Their Actions and Failure to Act Created an Environment in Correction Facilities Where Sexual Abuse by Staff Was Frequent and Predatory Behavior by Correction Officers/Guards Was Not Deterred.**

37. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were responsible for preventing sexual abuse by guards against detainees, including the Plaintiff.

38.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were on notice of the serious risk of sexual abuse by male guards faced by Plaintiff and other female detainees incarcerated at the Erie County Holding Center.

39.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to enact and enforce policies, including reporting requirements, that would have prevented Defendant, ROBERT M. DEE, from sexually assaulting the Plaintiff.

### A. Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Were Responsible for Preventing Sexual Abuse of Inmates

40.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were at all relevant times responsible for creating and enacting policies and procedures to protect the safety of detainees incarcerated at the Erie County Holding Center and ensuring that the policies and practices are enforced.

41.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to implement policies or procedures to protect detainees from sexual abuse at their facility.

42.     Despite repeated instances of officer sexual abuse of detainees at Erie County Holding Center, Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to enact or enforce policies to correct the prevalence of abuse at the Erie County Holding Center.

### B. Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Were Aware of The Substantial Risks of Sexual Abuse Faced by Female Prisoners

43.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were aware that the risk and numerous incidents of sexual abuse of female detainees at the hands of male prison guards led the federal government to enact statutes criminalizing any sexual

contact between prisoners and prison guards/staff.

44.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were aware that in New York the risk and numerous incidents of sexual abuse of female inmates at the hands of male prison guards/staff led to the criminalization of any sexual contact between prisoners and correctional staff in the enactment of N.Y. Penal Law §130.05(3)(e), which deems persons in the custody of a state or local correctional facility "incapable of consent" to sexual conduct with facility employees, see N.Y. Penal Law § 130.05(3)(e)–(f), and subjects guards to criminal liability for such conduct, see, e.g., id. §§ 130.25(1), 130.60(1).

45.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, knew that the actual number of sexual assaults in the Erie County Holding Center was much higher than reported.

46.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were aware the assigning male staff to guard female prisoners creates a risk of sexual assault.

47.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were aware that the risk and incidents of sexual abuse in a prison setting led to the promulgation of international standards prohibiting the assignment of male corrections staff to guard women prisoners.  United Nations Standard Minimum Rules for the Treatment of Prisoners, Rule 53, adopted Aug. 30, 1955.

48.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, were aware that women prisoners were a more vulnerable population who faced an increased risk of sexual abuse by male officers.  Incarcerated women have a higher percentage of a history of sexual and physical abuse compared to male prisoners or to women who have never been incarcerated.

49.     Victims of sexual abuse are generally unlikely to come forward with complaints of sexual misconduct due to embarrassment, humiliation, and a fear that their complaints will be met with cynicism.

50.     The failure of Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, to implement and enforce policies and procedures that would prevent and punish all sexual misconduct contributes to a tolerant and permissive culture, which increases the risk of sexual abuse of women prisoners.

**C.     Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Failed to Enact Supervisory Policies That Would Prevent Sexual Abuse by Male Staff and Failed to Enforce Existing Policies**

51.     Despite known risks and frequent incidents of sexual misconduct by Defendant, ROBERT M. DEE, Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, through their policies and procedures failed to protect the women prisoners in their custody from harm. Defendant, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, inadequately supervised ROBERT M. DEE, placing women prisoners at a heightened risk of sexual abuse.

52.     Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to enact (or enforce) appropriate rules and policies concerning the behavior of male staff and failed to enforce existing rules and policies governing staff behavior.

53.     Despite their knowledge of the risk of sexual assault in women's prisons, the Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, permitted the assignment of male guards, specifically ROBERT M. DEE, to posts which provided him with opportunities for unmonitored contact with female inmates, including the Plaintiff.

54. Allowing male staff long periods of unsupervised contact allows time for sexual abuse of female inmates and also promotes an environment where male staff can develop personal relationships with female inmates to groom and coerce them into sexual acts over time.

55. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, knew that changing policies and procedures to prohibit a single male staff member from watching female inmates for prolonged periods would reduce the risk of staff-inmate sexual abuse, but they chose not to implement that policy.

>   **D. Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Failed to Implement Policies for Staff to Carry Out Unannounced and Random Supervisory Rounds, Which Created Risk of Harm to Plaintiff and Led to Sexual Abuse**

56. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, not only permitted a single male guard to be alone with female inmates for long periods of time but failed to enact and enforce adequate rules and policies to ensure that unannounced, random supervisory rounds were conducted, which would have alleviated the high risk of sexual abuse.

57. Supervisory rounds consist of a supervisor checking in on various posts throughout the facility to oversee prison guards/staff and ensure there is no problem. Random and unannounced supervisory rounds would deter guards from forming inappropriate relationships with female inmates or from sexually abusing them.

58. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, knew that in previous sexual abuses cases of female inmates, the lack of proper supervisory rounds had facilitated the sexual abuse.

59. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to create or enforce policies that led to supervisory rounds being conducted without

notification to officers.

> **E.  Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Failed to Install or Cause the Monitoring of Existing Cameras to Prevent Sexual Abuse and Grooming of Inmates for Sexual Abuse.**

60. To the extent, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, installed or required installation of surveillance cameras, use of those cameras for supervision was, at all relevant times, inadequate to protect female prisoners.

61. Upon information and belief, surveillance cameras were not installed throughout Erie County Holding Center.  Many enclosed and isolated areas inside the prison, where sexual abuse is more likely to occur, or have been reported to have occurred, are outside of the any video or audio surveillance.  These areas included elevators, hallways and in the "short block".

62. Where surveillance cameras did exist, they were not adequately monitored, if at all.

63. Video camera footage was not monitored to detect or deter the formation of improper relationships by officers with inmates.

> **F.  Defendants Erie County, Timothy B. Howard, Former Erie County Sheriff; And Thomas Diina, Superintendent of The Jail Management Division, Created A Culture Where Warning Signs of Sexual Abuse Were Ignored and Inappropriate Staff-Inmate Relationships Were Permitted.**

64. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, failed to enact adequate rules and policies to monitor and discipline staff that were engaged in behavior that constituted warning signs of sexual abuse, such as spending a disproportionate amount of time talking to a particular prisoner, repeatedly requesting a particular prisoner for a specific assignment, discussing personal life with a prisoner, marrying a former prisoner, or asking a prisoner a personal question.  Staff were not disciplined or counseled when supervisors witnessed behavior that was indicative of warning signs of sexual abuse.

65. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, created a culture of ignoring staff-inmate relationships by failing to investigate or discipline officers who knew of improper relationships between prison guards and inmates.

66. The lack of enforcement of these policies made it clear that prison staff was under no duty to report warnings signs of abuse of inappropriate staff-inmate relationships.

67. It was known to guards and staff that they would not get into trouble for failing to report an inappropriate staff-inmate relationship, encouraging a culture of silence.

68. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, created a culture of intimidation when they failed to provide inmates with a confidential way of reporting incidents of sexual abuse.

69. Plaintiff was aware that reporting what had happened to her could result in retaliation by the prison staff and other inmates, making the abuse she already suffered worse.

70. Plaintiff also knew that she was more likely to be disbelieved or discredited if she reported the sexual abuse and/or felt that her charges would be increased.

71. Defendants, ERIE COUNTY, TIMOTHY B. HOWARD and THOMAS DIINA, by failing to enact or enforce certain policies, they created a culture where female inmates were discouraged to report sexual abuse.

72. Inmates were made more vulnerable to coercion and manipulation by guards since they knew that a complaint about inappropriate behavior would be discouraged or discredited.

**FIRST CAUSE OF ACTION**
**CRUEL AND UNUSUAL PUNISHMENT**
**VIOLATION OF U.S. CONSTITUTION AMENDMENT VIII**
**(BY JANE DOE AGAINST ROBERT M. DEE)**

73. Paragraphs 1- 72 are hereby incorporated and realleged.

74. By forcibly touching, sucking, and licking JANE DOE's breasts, grinding his genitals into her back, and ordering her to masturbate in front of him, ROBERT M. DEE, acted willfully and wantonly for his own sexual gratification.

75. There was no penological justification for ROBERT M. DEE's conduct.

76. ROBERT M. DEE's conduct was unreasonable and in violation of JANE DOE's clearly established constitutional right to be free from cruel and unusual punishment.

77. ROBERT M. DEE's conduct constituted cruel and unusual punishment under the Fourteenth and/or Eighth Amendment of the U.S. Constitution.

78. JANE DOE suffered physical, emotional, and psychological pain and other damages as a result of this violation.

**SECOND CAUSE OF ACTION**
**SEXUAL ABUSE IN THE FIRST DEGREE**
**VIOLATION OF N.Y. PENAL LAW §130.65**
**(BY JANE DOE AGAINST ROBERT M. DEE)**

79. Paragraphs 1- 78 are hereby incorporated and realleged.

80. From approximately October of 2019 through November 20, 2019, ROBERT M. DEE, sexually assaulted JANE DOE, on numerous occasions by repeatedly and forcibly touching, sucking, and licking JANE DOE's breasts and grinding his genitals into her back and/or subjecting her to masturbation and bodily exposure.

81. Such acts violated N.Y. Penal Law §130.65.

82. JANE DOE suffered physical, emotional, and psychological pain and other damages as a result of this violation.

### THIRD CAUSE OF ACTION
### NEW YORK COMMON LAW BATTERY
### (BY JANE DOE AGAINST ROBERT M. DEE)

83. Paragraphs 1- 82 are hereby incorporated and realleged.

84. The repeated sexual assaults by ROBERT M. DEE on JANE DOE constituted a battery upon JANE DOE in that the above-described bodily contact was intentional, unauthorized, and grossly offensive in nature.

85. JANE DOE suffered physical, emotional, and psychological pain and other damages as a result of this violation.

### FOURTH CAUSE OF ACTION
### DELIBERATE INDIFFERENCE
### VIOLATION OF U.S. CONSTITUTION AMENDMENT VIII
### (BY JANE DOE AGAINST TIMOTHY B. HOWARD and THOMAS DIINA)

86. Paragraphs 1- 85 are hereby incorporated and realleged.

87. Defendants, TIMOTHY B. HOWARD and THOMAS DIINA, were both personally aware of the imminent risk to JANE DOE posed by ROBERT M. DEE.

88. Defendants, TIMOTHY B. HOWARD and THOMAS DIINA, failed to take any steps to protect JANE DOE from ROBERT M. DEE.

89. As a result of Defendants, TIMOTHY B. HOWARD and THOMAS DIINA, failure to act, ROBERT M. DEE subjected JANE DOE to illegal sexual activity on numerous occasions after Defendants, TIMOTHY B. HOWARD and THOMAS DIINA learned of the risk to JANE DOE that ROBERT M. DEE posed.

90. JANE DOE suffered physical, emotional, and psychological pain and other damages as a result of this violation.

91.

## FIFTH CAUSE OF ACTION
## DELIBERATE INDIFFERENCE
## VIOLATION OF U.S. CONSTITUTION AMENDMENT VIII
## (BY JANE DOE AGAINST ERIE COUNTY, TIMOTHY B. HOWARD)

92. Paragraphs 1- 91 are hereby incorporated and realleged.

93. A municipality, such as the COUNTY AND/OR SHERIFF TIMOTHY B. HOWARD, may be held liable under § 1983 when its official policies or customs violate the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

94. Defendants, COUNTY AND/OR TIMOTHY B. HOWARD, established, condoned, ratified, and/or encouraged customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of Plaintiff, and the damages and injuries described herein. They did so with deliberate indifference to the rights of the detainee, and/or prisoner and had actual and/or constructive knowledge of the pervasive and widespread practice of its deputies' sexual assault and failure to report sexual assault for many years, yet failed to do anything to end the practice. These written and unwritten policies, customs, patterns, and practices included:

   a) inadequate rules and policies to monitor and discipline staff that were engaged in behavior that constituted warning signs of sexual abuse, such as spending a disproportionate amount of time talking to a particular prisoner, repeatedly requesting a particular prisoner for a specific assignment, discussing personal life with a prisoner, marrying a former prisoner, or asking a prisoner a personal question.
   b) Staff were not disciplined or counseled when supervisors witnessed behavior that was indicative of warning signs of sexual abuse.
   c) Failing to train deputies regarding the constitutional rights of detainees and inmates to be free from sexual assault and/or the state and federal laws and reporting requirements.
   d) Permitting deputies displaying "red flags" of sexual abuse of inmates to continue to guard female inmates.
   e) Failing to discipline deputies that have repeatedly been reported by inmates.

      f) Failing to investigate and reviewing sexual assault incidents and/or rape.
      g) Failing to properly supervise and monitor deputies responsible for guarding female inmates.
      h) Failing to properly screen, during the hiring process, and supervise thereafter, deputies to eliminate sexual assaults by deputies on female inmates.
      i) Failing to have in place, or failing to follow, a policy or procedure to investigate sexual abuse in correctional settings.
      j) Retaining the deputy(ies), when they knew or should have known of his/her propensity to sexually abuse inmates.

95. At all relevant times, Defendants acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights of Plaintiff. The actions of the defendants were malicious, willful, wanton, and reckless.

96. The failure by Defendants to supervise, train, or discipline personnel was so obvious that the failure to do so amounted to a policy of "deliberate indifference."

97. Such acts as alleged herein were the proximate cause of injury and damage to the plaintiff.

98. Upon information and belief, Defendants' custom, practice, and/or policy on condoning sexual assault by its deputies, directly and proximately resulted in the Plaintiff being assaulted, battered, subjected to sexual assault.

99. Upon information and belief, and despite due and repeated notice that its deputies have an ongoing custom or practice of sexually assaulting inmates and thereafter not timely and/or properly reporting allegations of sexual assault by its deputies, Defendants have not implemented any particular training, oversight measures or policies designed or intended to curtail the improper sexual assault by its deputies on female inmates, until this year.

100. JANE DOE suffered physical, emotional, and psychological pain and other damages as a result of this violation.

## SIXTH CAUSE OF ACTION
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
### (BY JANE DOE AGAINST ERIE COUNTY, TIMOTHY B. HOWARD)

101. Paragraphs 1-99 are hereby incorporated and realleged.

102. By failing to remedy the wrongs committed by their subordinates, in failing to properly train, screen, supervise, or discipline their subordinates, and by personally participating in the constitutional injuries as set forth elsewhere herein, defendant COUNTY and the Defendant SHERIFF TIMOTHY B. HOWARD violated plaintiff's rights under the United States Constitution, through 42 U.S.C. §1983.

103. As a result of the foregoing, Plaintiff was deprived of their liberty and other constitutional rights, suffered bodily injury, pain and suffering, psychological and emotional injury, costs, and expenses, and were otherwise damaged and injured.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and demands judgment in her favor on each of her claims against defendants as follows;

a. Exercise jurisdiction over Plaintiff's claims and grant her a jury trial.

b. Award Plaintiff economic and non-economic damages, in an amount to be ascertained according to proof, and interest on said sums from the date of judgment.

c. Award Plaintiff punitive damages in an amount sufficient to punish them and deter others from similar conduct.

d. Award Plaintiff reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988; and

e. Grant Plaintiff such other and further relief as this Court deems just and appropriate, including, declaratory and injunctive relief.

DATED:    Buffalo, New York
               October 31, 2022

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By: <u>/s/ Melissa D. Wischerath</u>
MELISSA D. WISCHERATH, ESQ.
Attorneys for Plaintiff
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[MDW: # 71373.0001]